UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

STEVEN HOOD, #08248-028,

    Petitioner,

v.                                                                        Action No. 2:19cv26

MARK BOLSTER,
Acting Warden,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

    Petitioner Steven Hood ("Hood"), a federal inmate convicted and sentenced in the Southern District of Indiana, and housed in the Federal Correctional Center in Petersburg, Virginia, filed a *pro se* petition, pursuant to 28 U.S.C. § 2241. ECF No. 1. Hood alleges he was denied due process when, following a disciplinary hearing held December 19, 2012, he did not receive a written statement by the disciplinary hearing officer regarding the evidence relied upon and the reasons for the disciplinary action. ECF No. 1 at 2, 6.[1]

    This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Local Rules of the United States

---

[1] Hood has filed three petitions pursuant to section 2241 alleging he was denied due process when, following disciplinary proceedings, respondent failed to provide him with a written statement by the disciplinary hearing officer regarding the evidence relied upon and the reasons for the disciplinary action. Action No. 2:18cv692 (disciplinary hearing held on February 14, 2018); Action No. 2:19cv26 (disciplinary hearing held on December 19, 2012); and Action No. 2:19cv27 (disciplinary hearing held on July 29, 2011). The petitions filed in action nos. 2:18cv692 and 2:19cv27 will be addressed separately.

District Court for the Eastern District of Virginia. The undersigned **RECOMMENDS** that respondent's motion to dismiss, ECF No. 7, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DISMISSED WITH PREJUDICE**.

## I. STATEMENT OF THE CASE

Hood is a federal inmate who was convicted following his guilty plea in the Southern District of Indiana of conspiracy to distribute 500 grams or more of methamphetamine. ECF No. 1; *United States v. Perez*, 2:06cr8 (S.D. Ind. May 5, 2008) (judgment docketed in CM/ECF Jan. 30, 2013). Hood was sentenced on May 5, 2008, to 360 months in prison. *Id.* Hood is currently in custody in the Federal Correctional Center in Petersburg, Virginia, where the disciplinary proceedings that give rise to the petition occurred. ECF No. 1 at 1.

### A. Hood's disciplinary hearing process.

On November 1, 2012, Officer L. Edmonds issued Hood an incident report charging him with violating the Bureau of Prisons ("BOP") disciplinary code by using the telephone "for abuses other than criminal activity" on October 20, 2012. ECF No. 8-1 at 8.[2] Part I of the incident report, which was completed and signed by Officer L. Edmonds, was delivered to Hood on November 1, 2012. *Id.*; Declaration of Steven H. Hood ("Hood Decl.") at ¶ 3, ECF No. 12-1. The report indicates that on November 1, 2012, Officer Edmonds was monitoring a call made with inmate Shelton's "PAC" number recorded on October 20, 2012, and realized that the voice of the caller was not inmate Shelton. ECF No. 8-1 at 8. A review of the video monitors showed inmate Shelton initiating a telephone call and stepping away from the telephone station, then Hood approaching

---

[2] The Court may consider the reports attached to respondent's motion to dismiss without converting the motion into one for summary judgment, because the documents are integral to Hood's claims, referenced in his petition, and their authenticity is not in dispute. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 589, 606-07 (4th Cir. 2015).

2

the telephone station, wearing Shelton's hat, and having a telephone conversation for approximately 15 minutes. *Id.* A review of telephone records showed that Hood was the only inmate to have previously called the telephone number. *Id.*

Lieutenant J. Harrison conducted an investigation on November 1, 2012. *Id.* at 9. Lt. Harrison signed part III of the incident report, which outlined the investigation, indicating he advised Hood of his rights on November 1, 2012, Hood understood his rights, and Hood had a good attitude during the questioning. *Id.* When Hood was questioned regarding the incident, he stated, "I was out of minutes and asked Shelton to call so I could ask my girl if she was coming to visit. I didn't want her to come for a surprise visit for my birthday because I already had visitors set for that day." *Id.* At Hood's request, Lt. Harrison interviewed inmate Shelton. *Id.* The report quotes Shelton as saying, "I was trying to help a guy out. He's going through some things." *Id.* Lt. Harrison concluded that "the report [did] not support the charge of 297 [u]se of the telephone for abuses other than criminal activity, use of another inmates [sic] pin number," but supported a charge for violating code "397 Use of the telephone for abuses other than criminal activity which do not circumvent telephone monitoring." *Id.*

On November 7, 2012, Hood appeared before the Unit Discipline Committee ("UDC") and was advised of his rights. *Id.* at 8; Hood Decl. ¶ 5. With respect to the incident, Hood again stated that he had Shelton call "[his] girl" because he was out of minutes and needed to talk to her. *Id.* The UDC found Hood guilty of violating code 297 "based on [the] greater weight of [the] evidence . . . and inmates [sic] own admission," and referred the incident to the Discipline Hearing Officer ("DHO"). *Id.* The UDC Chairman signed the report, indicating it accurately reflected the proceedings. *Id.* Hood requested a copy of relevant documents, and was given parts I and II of the incident report. The same day, Hood was provided with, and signed, a "Notice of Discipline

3

Hearing Before the (DHO)." ECF No. 8-1 at 11; Hood Decl. ¶ 5. The notice indicated Hood was charged with a code 297 violation for "phone abuse." ECF No. 8-1 at 11. The notice further advised Hood that, during the hearing, he would have a right to have a staff member represent him, to call witnesses, and to present documentary evidence. *Id.* Hood indicated that he did not wish to have a staff representative at the hearing, and he did not wish to have witnesses present. *Id.*

On December 19, 2012, Hood appeared before DHO Blankenship. *Id.* at 13–15; Hood Decl. ¶ 6. When Hood asked for a copy of all relevant documents, the DHO asked if he had received part I of the incident report and Hood responded that he had. Hood Decl. ¶ 6. The DHO report, dated January 14, 2013, indicates that Hood was given advance written notice of the charge in the incident report provided to him on November 1, 2012, was advised of his rights before the DHO on November 7, 2012, and was given a written copy of those rights the same day. ECF No. 8-1 at 13.

Hood waived his right to a staff representative, and the right to present witnesses. *Id.* The report reflects that the DHO considered five photographs taken of the incident. *Id.* at 14. The DHO report summarizes Hood's statement as follows:

> Inmate Hood acknowledged receipt of a copy of the report and understanding his rights before the DHO. At the time of the DHO hearing, inmate Hood did not have any issues with the disciplinary process up to this point.
> . . . .
> Inmate Hood then made this initial statement: "I had run out of minutes, and needed to work out some visiting issues." "I made the call, I knew what I was doing, and that I was wrong."

*Id.* at 13; Hood Decl. ¶ 6 ("I unknowingly made a statement of guilt to the DHO.").

The DHO found Hood guilty of the charge, and discussed the evidence considered in making the finding, specifically, Officer Edmonds' incident report and Hood's admission of guilt. ECF No. 8-1 at 14; Hood Decl. ¶ 6. The DHO sanctioned Hood to the following: (1) disallowance

4

of 27 days of good conduct time; (2) 30 days of disciplinary segregation, suspended, pending 180 days of clear conduct; and (3) loss of telephone privileges for 3 months. ECF No. 8-1 at 15. The DHO explained the punishment, including that Hood's "actions interfered with the ability of staff to monitor whether inmates are making calls for prohibited or illegal purposes"; "[t]he loss of [good conduct time] sanctions was imposed to comply with mandatory sanctioning guidelines for [Prison Litigation Reform Act] inmates"; and "[t]he other sanctions imposed by the DHO were given as punishment for your misconduct." *Id.*

Hood requested a copy of the DHO report on January 30, 2013. ECF No. 1 at 17; Hood Decl. ¶ 8. According to the declaration of Jillian Anspach, the discipline hearing office secretary, "[o]n May 15, 2013, [she] delivered the DHO report to Petitioner and signed the DHO report to confirm the delivery." ECF No. 8-1 at 5. Notations on the DHO report indicate that the report was provided to Hood at 10:00 on May 15, 2013. *Id.* at 15. The report notified Hood that he could appeal the DHO's findings within 20 calendar days. *Id.* at 5, 15. Hood did not appeal the decision. *Id.* at 5, 17–18.

According to Hood, he was not provided with a copy of the report until respondent filed the motion to dismiss on June 11, 2019. ECF No. 1 at 6, 8, 12–14. As of November 13, 2019, Hood had not appealed the decision. ECF Nos. 15, 16.

B.  **Hood's federal petition.**

On January 11, 2019, Hood filed a section 2241 petition for a writ of habeas corpus asserting that he had been unable to appeal the DHO's decision, because the BOP would not accept an appeal without a copy of the DHO report, and he had received no response to his request for a copy of the DHO report. ECF No. 1 at 3, 6, 8, 12. Hood seeks expungement of the incident report and restoration of 27 days of good conduct time credit. *Id.* at 8, 15.

5

On June 11, 2019, respondent filed a motion to dismiss the petition. ECF No. 7. Respondent asserts that Hood received the DHO report and his habeas petition is moot, ECF No. 8 at 9–10; Hood was afforded all due process rights to which he was entitled during his disciplinary hearing, *id.* at 10–12; Hood has failed to show that he was prejudiced by the delayed receipt of the DHO report, *id.* at 12–14; and Hood has not exhausted his administrative remedies, *id.* at 14–16. Thus, the respondent asked that Hood's habeas petition be dismissed, or in the alternative, that summary judgment be entered in favor of the respondent. *Id.* at 17.

Hood filed an opposition to the motion to dismiss on July 25, 2019. ECF No. 12. Hood asserts respondent violated his due process rights by failing to provide him with: (1) notice of the charges against him 24 hours before the hearing; (2) an opportunity to present documentary evidence in his defense; and (3) a written statement of the evidence relied on, and the reasons for the disciplinary action. *Id.* at 8–11. Hood filed a supplement to the opposition on September 9, 2019, citing the Fourth Circuit decision in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). ECF No. 13.

In response to the Court's order, respondent filed a notice addressing exhaustion of administrative remedies on November 13, 2019, and Hood responded to the notice on November 27, 2019. ECF Nos. 14–16.

## II. ANALYSIS

### A. Hood has failed to exhaust administrative remedies.

Generally, federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004); *see also Timms v. Johns*, 627 F.3d 525, 530-31 (4th Cir. 2010). Administrative exhaustion "protects 'administrative agency authority,'" ensuring that agencies have an opportunity to correct mistakes

and discouraging disregard of agency procedures. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Additionally, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," exhaustion promotes judicial efficiency. *Id.*

The exhaustion requirement in section 2241 is judicially imposed, and "even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987) ("[T]here are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion.")).

Although Hood now has the report and has not exhausted his administrative remedies, the Court recommends addressing and dismissing the petition on the merits.

**B.      Due process rights that prisoners possess when a protected liberty interest is at stake.**

Prisoners retain rights under, and may claim the protections of, the Due Process Clause in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a liberty interest in good conduct time credits, and when those credits are taken away, a prisoner is entitled to those procedures which are appropriate under the circumstances and required by the Due Process Clause to ensure that the credits were not taken away arbitrarily. *Id.* at 557–58. Specifically, the due process rights that prisoners possess when a protected liberty interest is at stake are: (1) written notice of the charges against them at least 24 hours before their hearing; (2) the opportunity to call witnesses and present documentary evidence in their defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence

relied on and the reasons for the disciplinary action taken. *Id.* at 563–66. To satisfy due process, the fact-finder's decision during a prison disciplinary hearing must be supported by "some evidence." *Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 455 (1985).

A delay in receiving a written statement of the evidence relied on that does not have a prejudicial effect on the prisoner's administrative appeal, does not provide a basis for habeas relief on due process grounds. *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (finding no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*"); *Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (finding the approximate eight-month delay in providing petitioner with a copy of the DHO report did not prejudice his ability to bring an administrative appeal); *Cook v. Warden*, 241 F. App'x 828, 829 (3d Cir. 2007) (finding "even if [the petitioner] did not receive the DHO's written report within 10 days . . . the delay had no prejudicial effect on [his] administrative appeal and thus does not provide a basis for habeas relief"); *Shahan v. Ormond*, No. 3:18cv200, 2018 WL 6681210, at *8 (E.D. Va. Dec. 19, 2018) (finding petitioner failed to demonstrate that he suffered any prejudice from over eight-month delay in receiving the DHO Report), *aff'd,* 778 F. App'x 217 (4th Cir. 2019); *see also Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (explaining that it is "not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay," where a 16-year delay by the government to notify an employer of potential liability was held to be a violation of due process because there was prejudice shown).

When a prisoner files a petition for writ of habeas corpus due to the prison's delay in providing a written statement, but the due process violation is subsequently remedied by providing

8

the prisoner with a written statement and allowing him to appeal, then there is no prejudicial effect on the prisoner, and his habeas petition should be dismissed. *Deroo v. Holinka*, 373 F. App'x 617, 617–19 (7th Cir. 2010); *see also Crawley v. Wilson*, No. 2:11cv542, 2012 WL 2505118, at *5 (E.D. Va. May 16, 2012) (citing *Consolidation Coal Co.*, 171 F.3d at 183, and holding that, where a prisoner's DHO report was delayed but he was still able to appeal the DHO's decision, there was no due process violation because there was no prejudice resulting from the delay in receiving his report).

C.  **Hood has failed to establish a violation of his due process rights.**

In Hood's petition, he does not dispute that the first two components of due process in *Wolff*—notice of charges and opportunity to present evidence—were satisfied. ECF No. 1. In his opposition to the motion to dismiss, however, Hood argues for the first time that he was not given notice of the charges 24 hours before the hearing or an opportunity to present documentary evidence in his defense. ECF No. 12 at 8–11. The evidence contradicts Hood's assertions.

Hood admits that he received part I of the incident report (Officer Edmonds' statement describing the incident and noting the potential code section violated) on November 1, 2012, and received part II of the incident report (noting the UDC's findings) on November 7, 2012. Hood Decl. ¶¶ 3, 5. Hood also acknowledges that he signed a "Notice of Discipline Hearing Before the (DHO)" form on November 7, 2012, which noted the code violation and that he was being referred to the DHO for a hearing. *Id.* at ¶ 5. Hood's hearing before the DHO took place on December 19, 2012, over one month after Hood signed the notice. ECF No. 8-1 at 13. The record, including Hood's declaration, reflects that the first component of due process in *Wolff*—notice of charges 24 hours before the hearing—was satisfied.

9

With respect to the second component of due process in *Wolff*, the opportunity to call witnesses and present documentary evidence in his defense, Hood asserts his rights with respect to presenting documentary evidence were violated when certain documents were not produced prior to, or during, his disciplinary hearing: (1) the investigation notes completed by Officer Harrison on November 1, 2012, contained in part III of the incident report, ECF No. 8-1 at 9; ECF No. 12 at 8–9; Hood Decl. ¶¶ 5, 6; and (2) the five closed-circuit television pictures depicting the incident that were viewed by the DHO, ECF No. 8-1 at 4; ECF No. 12 at 9; Hood Decl. ¶ 6.[3]

Part III of the incident report, completed by Lt. Harrison on November 1, 2012, indicates Hood was read his rights and stated that he understood them. ECF No. 8-1 at 9. Hood made a statement admitting to asking inmate Shelton to initiate the call to Hood's girlfriend because Hood was out of minutes. *Id.* At Hood's request, Lt. Harrison interviewed inmate Shelton, who stated that he was trying to help out Hood. *Id.* Lt. Harrison concluded that "the report [did] not support the charge of 297 [u]se of the telephone for abuses other than criminal activity, use of another inmates [sic] pin number," but supported a charge for violating code "397 Use of the telephone for abuses other than criminal activity which do not circumvent telephone monitoring." *Id.* Hood notes that a code 297 violation must be referred to the DHO, whereas the less serious code 397 violation can be resolved at the UDC stage. Hood Decl. ¶ 4 n.3.

Hood asserts that, at the DHO hearing, he "unknowingly made a statement of guilt to the DHO consistent with Lieutenant Harrison's investigative conclusions as detailed in the unprovided Part III of the incident report . . . supporting that of only a Code 397 violation." *Id.* at ¶ 6. Hood

---

[3] The notice of DHO hearing informed Hood that, during the hearing, he would have a right to have a staff member represent him, to call witnesses, and to present documentary evidence. ECF No. 8-1 at 11. Hood has not asserted that he wanted a staff member to represent him or that he wanted to call any witnesses at his hearing. *See* ECF Nos. 1, 12. Only the right to present documentary evidence is at issue.

appears to be arguing that he would have only admitted to a Code 397 violation at his DHO hearing, as opposed to a Code 297 violation, if he had been provided with part III of the incident report. Presumably, however, his statements to the DHO regarding the underlying incident ("I had run out of minutes, and needed to work out some visiting issues" and "I made the call, I knew what I was doing, and that I was wrong") would have been the same. *See* ECF No. 8-1 at 13. Whether Hood's conduct resulted in a violation of Code 397 or 297 would be a decision left to the DHO.

In reaching the conclusion that Hood committed a Code 297 violation, the DHO relied on Hood's statement during the DHO hearing, as well as the written statement of Officer Edmonds contained in part I of the incident report. *Id.* at 14 (section V.). Officer Edmonds recounted that, while monitoring a recorded call made with inmate Shelton's "PAC" number, he noticed the voice was not Shelton's. *Id.* A review of the closed-circuit television monitors showed Shelton initiate a phone call, then wave Hood over. *Id.* Further,

> when inmate Shelton initiated the call he was wearing boots and a grey knit cap and you were wearing shower shoes and no cap. Then both of you walked out of camera view. When you re-entered the camera view you were observed wearing a grey knit cap but still wearing the same shower shoes.

*Id.*

Importantly, the UDC, which had access to Lt. Harrisons' investigative notes in part III, found Hood guilty of the more serious 297 violation for telephone abuse using another inmate's pin number, as opposed to the less serious 397 violation for telephone abuses that do not circumvent telephone monitoring. *Id.* at 8. Further, the DHO, who had access to Lt. Harrison's investigative notes and the finding of the UDC, also found Hood guilty of a 297 violation. *Id.* at 13–14.

To the extent that Hood was entitled to see part III of the incident report, failure to provide this portion of the report was harmless error. Hood admitted engaging in the underlying conduct

11

that resulted in the violation on multiple occasions: (1) on November 1, 2012, during Lt. Harrison's investigation; (2) on November 7, 2012, before the UDC; and (3) on December 19, 2012, before the DHO. *Id.* at 8–9, 13–14. Having access to part III of the incident report would not have aided his defense to the violation before the DHO. *See Lennear*, 937 F.3d at 277.

Next, Hood asserts that, although he requested a copy of all relevant documents when he appeared before the UDC and the DHO, he was not provided with copies of the five closed-circuit television pictures considered by the DHO. Hood Decl. ¶¶ 5–6; ECF No. 12 at 9. The DHO reviewed the pictures, but did not rely on the pictures to support the finding that Hood was guilty of telephone abuse. ECF No. 8-1 at 14 (sections III. D. and V.).

In *Lennear*, the prisoner being disciplined gave a different account of the incident than the prison staff member who reported the incident. 937 F.3d at 263–64. At some stage during the disciplinary hearing proceeding, Lennear requested access to, and consideration of, any video surveillance evidence of the incident. *Id.* at 266–67. No recordings of video surveillance were reviewed, however, during Lennear's disciplinary hearing proceedings. *Id.* On habeas review, the Fourth Circuit held, in prison disciplinary proceedings, prisoners have a qualified right to access video surveillance evidence. *Id.* at 270.

Unlike in *Lennear*, Hood's DHO reviewed the pictures of the telephone incident, although he did not rely on these when determining Hood's guilt. ECF No. 8-1 at 14. *See Lennear*, 937 F.3d at 272 (holding also that prisoners have a qualified right to compel official review of video surveillance evidence). Instead, the DHO relied on the statement by Officer Edmonds, who had reviewed and described the closed-circuit television recording. ECF No. 8-1 at 14. Officer Edmonds' statements were contained in part I of the incident report, which was provided to Hood on November 1, 2012. *Id.* at 8.

In addition, Hood admitted engaging in the underlying conduct that resulted in the violation on multiple occasions, and has not asserted innocence of the underlying conduct in his present petition. Despite having received Officer Edmonds' description of the surveillance video, Hood's petition nowhere contests the facts described by Edmonds. Hood's argument is that he would have only admitted to the lesser offense of a Code 397 violation if he had been provided with part III of the incident report. ECF Nos. 1, 12. Hood has not alleged how access to the pictures would have aided his defense or supported a finding of the lesser violation.

To the extent Hood was entitled to receive copies of the five pictures taken from the closed-circuit television recording of the incident, failure to provide him the pictures was harmless error. The pictures would not have aided his defense before the DHO. *See Lennear*, 937 F.3d at 277. Accordingly, even if *Wolff's* second component of due process was violated, any such violation here was harmless.

In his petition, Hood asserts that his due process rights in the third component of *Wolff* were violated when the written statement of the evidence relied on was not given to him, because he was unable to appeal the DHO decision without the written statement. ECF No. 1 at 3, 8, 12, 17. According to the declaration of the DHO secretary Jillian Anspach, she delivered the DHO report to Hood on May 15, 2013, and signed the report to confirm the delivery. ECF No. 8-1 at 5. The notation on the bottom of the DHO report reflects that Ms. Anspach delivered the report to Hood at 10:00 on May 15, 2013. *Id.* at 15. The report advised Hood that he had 20 days to appeal the decision. *Id.*

Although Hood's appeal was delayed due to the respondent's failure to provide him the DHO report for approximately five months, providing the report to Hood and allowing him to appeal the decision remedied the situation. Hood failed to file an appeal after receiving the report.

13

ECF No. 8-1 at 17–18. Hood has failed to show his ability to appeal the decision was prejudiced due to the five-month delay, and the delay does not provide a basis for the habeas relief sought. *Consolidation Coal Co.*, 171 F. 3d at 183; *Deroo*, 373 F. App'x at 617–19; *Crawley*, 2012 WL 2505118 at *5. Alternatively, if Hood is correct that the first time he received the DHO report occurred when respondent filed the motion to dismiss, ECF No. 1 at 6, 8, 12–14, then Hood had 20 days from his receipt of the report in June 2019 to file his appeal. As of November 13, 2019, Hood had not appealed the decision, or shown that his ability to appeal the decision was prejudiced. ECF Nos. 15–16.

Hood has received a copy of the DHO report, and the report references sufficient evidence to support the DHO's decision, including Officer Edmonds' incident report and Hood's admission of guilt to the UDC. ECF No. 8-1 at 14. Accordingly, because the delay in receiving the written statement was remedied and Hood has not shown that his right to appeal was prejudiced due to the delay, Hood's habeas petition should be dismissed with prejudice.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that respondent's motion to dismiss, ECF No. 7, be **GRANTED**, and Hood's petition for a writ of habeas corpus, ECF No. 1, be **DISMISSED WITH PREJUDICE**.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the

Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 3, 2019

## Clerk's Mailing Certificate

A copy of the foregoing was provided electronically to counsel for respondent and was mailed this date to:

>Steven Hood, #08248-028
>FCI Petersburg
>Inmate Mail
>P.O. Box 1000
>Petersburg, VA 23804

Fernando Galindo, Clerk

By _____
Deputy Clerk

December 3, 2019